UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| MARK T. BRADY and <br> MARY T. BRADY, <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES GOVERNMENT <br> and THE INTERNAL REVENUE SERVICE, <br><br> Defendants. | Docket No. 1:11-cv-199 (jgm) |

MEMORANDUM AND ORDER
(Doc. 12, 17, 20)

I.   Introduction

Plaintiffs Mark T. Brady and Mary T. Brady ("the Bradys") bring this action against the United States[1] for civil damages following a protracted dispute with the Internal Revenue Service ("IRS") over its application of a tax payment made in 1998. The Bradys have moved for summary judgment (Doc.12), which the United States has opposed. (Doc. 16.) The United States has also responded by moving to dismiss the Bradys' complaint for lack of jurisdiction or, alternatively, for summary judgment. (Doc. 17.) The Bradys have opposed this motion. (Doc. 19.) For the reasons

---

[1] The Complaint names "The United States Government" and the "The Internal Revenue Service" in its caption. (Doc. 1.) Despite noting that it was "incorrectly named and sued" under these names (Doc. 16 at 1), the United States has not raised a substantive objection to the Bradys' claims. See id. at 1-25. The Court will therefore treat the complaint as filed against the United States. See Husek v. Internal Revenue Serv., 778 F. Supp. 598, 600 (N.D.N.Y. 1991) (interpreting complaint as against the United States although caption named the IRS because the plaintiff had complied with procedural rule governing service on the United States).

1

that follow, the United States' motion to dismiss is GRANTED, and the Bradys' and the United States' motions for summary judgment are DENIED as moot.

In addition to these substantive motions, the United States has moved to strike the Bradys' reply to its summary judgment motion or, if denied, to file a sur-reply. (Doc. 20.) The motion to strike is DENIED, and the motion to file a sur-reply is GRANTED. The clerk shall docket the proposed sur-reply, which the United States attached to its motion. (Doc. 20-1.)

II.     Background[2]

The Bradys were the principals of Pro-Radio, Inc., which began incurring significant tax liabilities with the IRS in the early 1990s. (Doc. 17-16 at 1-2.) These liabilities were comprised of two types of employment taxes: trust fund taxes and non-trust fund taxes. Id. at 3. A trust fund tax is withheld by an employer from an employee's wages for payment of that employee's taxes. William D. Elliott, Federal Tax Collections, Liens and Levies § 20.09(9)(a) (2012). An employer, in contrast, owes a non-trust fund tax directly to the IRS. Id. The Internal Revenue Code ("IRC") subjects a corporation's principals, as well other responsible persons, to trust fund recovery penalties ("TFRPs") for failing to remit a trust fund tax to the IRS. 26 U.S.C. §§ 6672(a), 6671(b). There is no analogous penalty for non-trust fund taxes.

Pro-Radio filed a chapter 11 bankruptcy petition in January 1997. (Doc. 17-16 at 2.) Later that year, the IRS began assessing TFRPs against both of the Bradys as individuals. (Doc. 17-11 at 4.) The IRS continued to assess TFRPs through December 1998. Id.

In June of 1997, Pro-Radio sought authorization from the bankruptcy court to sell an FM radio station it owned. (Doc. 17-4 at 1.) The proposed order Pro-Radio submitted applied the proceeds towards its trust fund taxes first, with the remaining proceeds covering non-trust fund

---

[2] The facts are undisputed except where otherwise noted.

2

taxes. Id. at 22. The United States filed a partial objection, arguing that United States v. Energy Resources Co., 295 U.S. 545 (1990) prevented Pro-Radio from designating the payment of trust fund taxes first absent a showing that its successful reorganization required such an arrangement. (Doc. 17-4 at 1-2.) The United States limited its objection to the allocation of the proceeds; it raised no objection to the sale of the radio station. Id. Following a hearing, the bankruptcy court entered Pro-Radio's proposed order with certain hand-written modifications, including a footnote with respect to the IRS's claim stating, "All rights of the IRS reserved as to the allocation." (Doc. 17-6 at 2.)

Pro-Radio sold the radio station in November 1998 and paid the IRS just under $220,000 the following month. (Doc. 17-11 at 2.) The IRS then allocated approximately $44,000 of this payment towards Pro-Radio's post-petition tax liabilities. Id. at 2. The approximately $175,000 remaining was applied towards pre-petition tax liabilities, with around $84,000 applied against non-trust fund taxes first and the remaining $91,000 applied against trust fund taxes. Id. at 2; Doc. 17-16 at 3. Immediately before the IRS processed this payment, Pro-Radio owed just over $219,000 in pre-petition trust fund taxes. (Doc. 17-11 at 2.) Pro-Radio owed approximately $128,000 in trust fund taxes after the IRS processed the payment on December 28, 1998. Id. at 3. Had the IRS first applied Pro-Radio's payment towards trust fund taxes, the payment would have covered this liability in full and eliminated the TFRPs against the Bradys.[3] The IRS would have had approximately $150 to cover Pro-Radio's remaining tax liabilities.

---

[3] There is some dispute whether the Bradys' liability for trust fund taxes would have been eliminated entirely. See Doc. 19-2. To resolve these discrepancies, the Court made this calculation on its own using the figures provided by the United States in the Affidavit of James Rooney. (Doc. 17-11 at 2-4.) The Court did not differentiate between pre-petition and post-petition tax liabilities. But see Doc. 16 at 6-7.

3

In the years following this payment, the IRS sought to collect the TFRPs assessed against the Bradys. (Doc. 19 at 3.) The Bradys disputed the assessment through various appeals within the IRS and entered several offers of compromise in the process. (Doc. 17-6 at 5-10; 19-2 at 1, 3; 19-7 at 3.) In a 2004 letter to the IRS, the Bradys made it clear they disputed the IRS's application of the payment from Pro-Radio's bankruptcy.

> In accordance with the intent of The U.S. Bankruptcy Court in Vermont, the Judge in 1997 directed that payments owed be applied "to the trust fund portion of the IRS claim." Joe Barry, in the Burlington office, has calculated if that had occurred in accordance with The Court's wishes, the balance owed the trust fund portion would be $33,202 - provided his manual computations are correct.

(Doc. 19-2 at 1.) A 2005 letter likewise demonstrates that the Bradys understood the IRS had not applied the payment against the trust fund taxes first.

> The Bankruptcy Court's <u>intent</u> (attached) was clear. Payments were to have been applied to The Trust Fund Portion. It was only after the IRS representative in a motion that was arbitrary, capricious and perhaps punitive, requested the right to allocate as the Service saw fit, was the Court's clear intent amended.

<u>Id.</u> at 4 (internal quotation marks omitted).

As part of its collection efforts, the IRS filed notices of liens and levies against Mr. Brady. In May 2007, Mr. Brady wrote the IRS to request that it remove two of these notices. (Doc. 19-3 at 1.) His letter reveals that he attended a hearing in September 2006 regarding these notices. <u>Id.</u> The IRS responded to the letter by removing the levy, but not the lien. (Doc. 19 at 1.) There is no evidence in the record that the IRS filed additional notices following the May 2007 letter.

The IRS did not file any notices of liens or levies against Mrs. Brady. (Doc. 17-11 at 6.) In fact, when the IRS informed Mrs. Brady of its intent to file a levy against her, she requested a collection due process hearing in response. (Doc. 17-16 at 6.) The request stated that she "[d]isagree[d] with the amount [the] IRS says [it] is owed." (Doc. 19-1 at 8.) Mrs. Brady sent the

4

request in 2007. (Doc. 17-16 at 6.) Following a series of hearings beginning that year, a tax court judge ultimately determined that the IRS had erred in failing to apply the 1998 payment from Pro-Radio's bankruptcy to the trust fund taxes first. Id. at 19. The judge reasoned that the bankruptcy order required the IRS to do so. Id. at 19-22. Because the payment would have covered the trust fund taxes in full, had the IRS applied the payment to them first, the judge eliminated Mrs. Brady's liability for the TFRPs. Id. at 22. The judge entered this order on August 11, 2009. Id. at 1.

The IRS continues to dispute the tax court judge's interpretation of the bankruptcy order, although it declined to appeal the decision. (Doc. 17-3 at 5.) By June 2010, the IRS had released all the liens it filed against Mr. Brady. (Doc. 17-8 at 6.).

Beginning on May 23, 2011, the Bradys mailed various IRS employees letters seeking damages for the IRS's unauthorized collection actions, violation of bankruptcy orders, and failure to release liens. (Doc. 18-1, 18-2, 18-3.) The IRS responded to some of them by requesting additional information from the Bradys. Id.

The Bradys filed this action on August 8, 2011. (Doc. 1.) Their complaint alleges that the IRS abused its power in failing to apply the sale proceeds to the trust fund taxes first and subsequently filing liens and levies against them. Id. at 2-3. The Bradys seek damages for, inter alia, the lost financial opportunities and emotional stress caused by the ten-year dispute that followed the application of the sale proceeds. Id. at 3-6.

III. Discussion

A. Standard of Review

A case is properly dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction where "the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "[T]he United States, as

5

sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." Id. (quoting United States v. Mitchell, 445 U.S. 535, 538 (1980)). A plaintiff bears the burden of establishing jurisdiction by a preponderance of evidence. Id. A court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff" when reviewing such motions. Natural Res. Def. Council v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006) (internal quotation omitted). A court may supplement these factual allegations with evidence in the record. Hamm v. United States, 483 F.3d 135, 137 (2d Cir. 2007).

B.   Section 7432

The Bradys have not alleged a cognizable claim under section 7432 of the IRC. 26 U.S.C. § 7432. A taxpayer may sue the United States in district court under this section "[i]f any officer or employee of the [IRS] knowingly, or by reason of negligence, fails to release a lien under section 6325 on property of the taxpayer." 26 U.S.C. § 7432(a). Section 6325, in turn, requires the IRS to release any lien within thirty days of "find[ing] that the liability for the amount assessed, together with all interest in respect thereof, has been fully satisfied or has become legally unenforceable." 26 U.S.C. § 6325(a). A finding by the IRS triggers its obligation to release the lien within thirty days. Husek, 778 F. Supp. at 605 (stating "it is the IRS, not the taxpayer, who must make the determination" under section 6325). Provided "the IRS complied with the procedures set forth in section 6325 upon making its determination, . . . [a] plaintiff cannot maintain a suit for damages pursuant to section 7432." Id. As one court has put it:

> [T]he threshold issue [under section 7432] is not whether the IRS knew or should have known that the taxes underlying the lien were satisfied or legally unenforceable, but rather, the issue is whether the IRS . . . knew or should have known that the requirements of section 6325 had been met—that there was an actual [or constructive]

6

> 'finding' by the district director [that the tax liability was satisfied or unenforceable].

Bloom v. United States, 220 F. Supp. 2d 382, 390 (M.D. Pa. 1999).

The Bradys have not alleged the IRS failed to release a lien within thirty days after finding it was satisfied or unenforceable. See Doc. 1 at 1-6. Rather, the Bradys challenge the IRS's refusal to release liens and levies based on its erroneous interpretation of the bankruptcy order in 1998. Id. at 3. See also Doc. 19 at 3 (stating that the IRS's "subsequent failure to release liens in the years that followed [the allocation] was clearly negligent"). These allegations fall beyond the waiver of sovereign immunity in section 7432. The section only permits lawsuits against the United States where the IRS negligently or knowingly failed to comply with section 6325. A plaintiff cannot rely on section 7432 to recover damages for liens or levies based on improperly assessed tax liabilities. See Bloom, 220 F. Supp. 2d at 390-91 (finding no section 7432 claim where IRS had filed liens for tax assessments a settlement agreement rendered unenforceable and a bankruptcy discharge rendered satisfied); Husek, 778 F. Supp. at 605 (dismissing 7432 claim because taxpayer did "not contend that the IRS failed to lift the lien once it determined that plaintiff's tax liability was satisfied as required by section 6325"). Even construing the Bradys' allegations in the light most favorable to them, the Court lacks subject matter jurisdiction over their section 7432 claim.

C.     Section 7433

The Court also lacks jurisdiction over the Bradys' section 7433 claim, as it is untimely.[4] Section 7433(a) provides a cause of action against the United States "[i]f, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the [IRS] recklessly or intentionally, or by reason of negligence, disregards any provision of this title, or any regulation promulgated under this title."  26 U.S.C. § 7433(a).  The limitations period in section 7433 requires taxpayers to file suit "within 2 years after the date the right of action accrues."  26 U.S.C. § 7433(d)(3).  The regulation implementing this period specifies that a cause of action accrues "when the taxpayer has had a reasonable opportunity to discover all essential elements of a possible cause of action."  26 C.F.R. § 301.7433(g)(2).

The Bradys filed suit on August 8, 2011.  (Doc. 1.)  The two-year limitations period in section 7433 therefore bars claims the Bradys had a reasonable opportunity to discover before August 8, 2009.  The Bradys' section 7433(a) claims allege the IRS violated a bankruptcy order in allocating the payment it received from Pro-Radio's bankruptcy on December 28, 1998.  Id.  A

---

[4] There is some dispute between the circuits whether the limitations period for filing an action under section 7433 is jurisdictional.  Compare Keohane v. United States, 669 F.3d 325, 330 (D.C. Cir. 2012) (timeliness is not jurisdictional) with Kimball v. Internal Revenue Serv., 351 F.App'x. 170, 171 (9th Cir. 2009) (timeliness is jurisdictional).  The United States has expressed a preference for "bring[ing] some discipline to the use of this term" in recent cases.  Henderson ex rel. Henderson v. Shinseki, 131 S. Ct. 1197, 1202 (2011) (citing cases).  For now at least, the Second Circuit regards limitations periods in federal statutes authorizing lawsuits against the United States as jurisdictional.  E.g., Long Island Radio Co. v. Nat'l Labor Relations Bd., 841 F.2d 474, 477 (2d Cir. 1988) (stating that such "limits set the temporal boundaries of the consent to be sued; they grant the tribunal in which the claim is to be filed jurisdiction to entertain only those claims that are filed within the time allowed by the statute").  If the limitations period is not jurisdictional, the Court would nevertheless rule on summary judgment that the Bradys' complaint is untimely as a matter of law.  See Fed. R. Civ. P. 56(a). While the burden of proof would shift to the United States on summary judgment, the undisputed facts show that the section 7433 claim falls outside the limitations period here.  See In re Omnicom Grp., Inc. Sec. Litig., 597 F.3d 501, 509 (2d Cir. 2010) (summary judgment appropriate where "undisputed facts reveal that the plaintiff cannot establish an essential element of the claim") (internal quotation omitted).

8

nearly thirteen-year gap separates this allocation from the date the Bradys filed suit. Through letters written to the IRS in 2004 and 2005, the Bradys reveal that they knew well before August 2009 that the IRS had not allocated the payment towards the tax fund first. See Doc. 19-2 at 1, 4. The Bradys also assert in their opposition that, "[a]s early as 2004, we contested the IRS'[s] application of the funds." (Doc. 19 at 2.) By their own admission, the Bradys disputed the application of the funds in 2004, yet waited until 2011 to file suit. The Bradys had more than a "reasonable opportunity to discover" the application before August 2009; they in fact discovered (and disputed) the application of the payment from Pro-Radio's bankruptcy years earlier.

The Bradys respond that they believed they "had no [] case to bring until . . . [the tax court's decision] on August 14, 2009" as "[p]rior to that, [their] ordeal with the IRS was merely a lengthy dispute." (Doc. 19 at 6.) This argument is unavailing. A section 7433 claim accrues "when an injury is definite, readily discoverable, and accessible in the sense that nothing impedes the injured party from seeking to redress it." See Ranciato v. United States, No. 300-cv-1024, 2001 WL 58827, *3 (D. Conn. Jan. 23, 2001) (quoting Dziura v. United States, 168 F.3d 581, 583 (1st Cir. 1999)). "The legal rights that stem from certain facts or circumstances need not be known, only the facts or circumstances themselves." Stone v. Williams, 970 F.2d 1043, 1049 (2d Cir. 1992), cert. denied, 113 S. Ct. 2331 (1993) (interpreting similar limitations period in Copyright Act). The Bradys' right of action accrued when they learned the IRS had misapplied the sale proceeds, not when the tax court decision adopted their position years later. See Ranciato, 2001 WL at *3 (ruling that section 7433 claim accrued when unlawful levies issued, not when IRS published apology for doing so). No provision in section 7433 required the Bradys to seek relief in the tax court before filing their action. See 26 U.S.C. § 7433.

Even if the Bradys had filed their claim within the limitations period, this Court would lack jurisdiction to decide it. Section 7433 provides a remedy solely for illegal collection activities. Ihasz v. United States, 997 F. Supp. 547, 551 (D. Vt. 1997). Where the IRS follows proper procedures to collect an improperly assessed tax, a taxpayer must seek a different remedy. Id. The Bradys allege the IRS misapplied the payment from Pro-Radio's bankruptcy, thereby causing the improper assessment of TFRPs. (Doc. 1 at 2-3.) The Bradys have not alleged the IRS engaged in illegal collection activities following this assessment. Id. Rather, they allege that the misapplied payment and resulting tax assessment taint the IRS's collection activities. The Bradys cannot maintain an action under section 7433 on this basis. E.g., Miller v. United States, 66 F.3d 220, 222-23 (9th Cir. 1995), cert. denied, 116 S. Ct. 1317 (1996).

A separate provision in section 7433 is also inapposite. If the IRS violates an automatic stay or a bankruptcy discharge order, section 7433(e) permits taxpayers to petition bankruptcy courts for damages. 26 U.S.C. § 7433(e)(1). A petition to a bankruptcy court is the "exclusive remedy for recovering damages resulting from such actions." 26 U.SC. § 7433(e)(2). While the Bradys have not alleged stay or discharge violations in their complaint (Doc. 1 at 1-6), the Bradys did allege violations in several letters to the IRS prior to filing suit. (Doc. 18-1 at 3; Doc. 18-3 at 7, 9.) Assuming they continue to advance these claims, the Bradys seek redress in the wrong court. See Michaelesco v. United States, 410 B.R. 129, 131 (D. Conn. 2009), aff'd, 383 F.App'x. 42 (2d Cir. 2010) (rejecting section 7433 claim based on automatic stay violation by IRS because only bankruptcy court may consider such claims).

IV. Conclusion

For the foregoing reasons, the United States' motion to dismiss for lack of subject matter jurisdiction (Doc. 17) is GRANTED. Both the Bradys' and the United States' motions for summary

10

judgment are DENIED as moot. (Doc. 12, 17.) The motion to strike is DENIED, and the motion to file a sur-reply is GRANTED. (Doc. 20.) The Clerk shall docket the proposed sur-reply attached to the United States' motion. (Doc. 20-1.)

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 5th day of November, 2012.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge